IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAIGE PEABODY YAGER, ET AL. | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 12-4789 |
| | : | |
| STARWOOD HOTELS & RESORTS | : | |
| WORLDWIDE, INC., ET AL. | : | |

**SURRICK, J.**                                                                 **JUNE  3 , 2013**

### MEMORANDUM

Presently before the Court are Defendant Starwood Hotels & Resorts Worldwide, Inc.'s Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P 12(b)(3) (ECF No. 4), and Defendant Sheraton Nassau Beach Resort's Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P 12(b)(3) (ECF No. 13).  For the following reasons, Defendants' Motions will be denied.

**I.      BACKGROUND**

On July 26, 2012, Plaintiffs Paige Peabody Yager and her husband, Jeffrey Yager, commenced this action in the Philadelphia Court of Common Pleas against Defendants Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"), Sheraton Nassau Beach Resort ("Sheraton"), and Baha Mar Properties, Ltd. ("Baha Mar").  (Compl., Notice of Removal, Ex. A, ECF No. 1.)[1] Plaintiffs are citizens of Pennsylvania and reside in Bala Cynwyd, Pennsylvania. (Am. Compl. ¶ 1, ECF No. 11.)  Starwood, a hospitality ownership and management organization, is incorporated in Maryland, with its current corporate office located in White Plains, New York.

---

[1] Plaintiffs' original complaint named Baha Mar Resorts, Ltd. as a Defendant.  An amended complaint was filed to correct the corporate name of the Defendant.

1

(*Id*. at ¶¶ 2, 7.) Starwood has a registered corporate agent in Harrisburg, Pennsylvania. (*Id*. at ¶ 2.) Sheraton, a Bahamian Resort hotel, is incorporated in the Bahamas with its principal place of business in Nassau, Bahamas. (*Id*. at ¶ 3.) Baha Mar owns and operates resorts in the Bahamas, is incorporated in the Bahamas, and has its principal place of business in Nassau, Bahamas. (*Id.* at ¶¶ 4, 9.) According to Plaintiffs, Baha Mar owns the Sheraton, and both entities have a management agreement with Starwood, whereby Starwood operates and manages the Sheraton. (*Id.* at ¶¶ 10, 11.) Plaintiffs brought this negligence action against Defendants based on injuries sustained by Mrs. Yager while she was a guest at the Sheraton. (*Id*. at ¶¶ 15-17.) On April 4, 2011, Mrs. Yager was sitting on the hotel's beach in a lounge chair when a several hundred pound inflatable waterslide, positioned near her chair, blew over, and crashed on top of her. (*Id.* at ¶¶ 16, 17.)[2] As a result of the incident, Mrs. Yager suffered severe personal injuries. (Am. Compl. ¶ 17.)

On August 21, 2012, Starwood removed the action to this Court. (Notice of Removal.) On August 28, 2012, Starwood filed the instant Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3). (Starwood's Mot., ECF No. 4.) Defendant Sheraton also filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3) on November 26, 2012. (Sheraton's Mot., ECF No. 13.)[3], [4]

---

[2] According to Defendants, Aqua Marine Water Sport Activities Ltd. ("Aqua Marine") owned the waterslide at issue and was responsible for inflating and securing its position in the water off the beach. (Sheraton's Mot. 3, 7.) Plaintiffs bring no claims against Aqua Marine.

[3] Defendants title their Motions, "Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P 12(b)(3)." Federal Rule of Civil Procedure 12(b)(3) provides for dismissal of an action for "improper venue." Defendants argue that based on the doctrine of *forum non conveniens*, the Plaintiffs' Complaint must be dismissed.

2

On September 11, 2012, Plaintiffs filed a Response in Opposition to Starwood's Motion to Dismiss. (Pls.' Resp. to Starwood, ECF No. 5.) On October 19, 2012, Plaintiffs filed a Supplemental Brief Opposing Defendant Starwood's Motion to Dismiss. (ECF No. 9.) They also filed a response to Sheraton's Motion to Dismiss on December 7, 2012. (Pls.' Resp. to Sheraton, ECF No. 15.) On January 18, 2013, argument was held on Defendants' Motions. (Jan. 18, 2013 Hr'g Tr., ECF No. 21.)

## II. DISCUSSION

Plaintiffs argue that Mrs. Yager's injuries resulted from the negligence of Defendants and their agents, servants, workmen, and/or employees. (Am. Compl. ¶ 22.) Plaintiffs assert that Defendants negligent behavior includes:

> (a) failing to provide and maintain safe premises for business invitees and hotel guests, such as plaintiff; (b) failing to provide properly trained, experienced and supervised employees, servants, agents, workmen and/or independent contractors to adequately monitor, inspect and maintain the premises in a safe manner for the beneficial use and enjoyment of same by business invitees such as the plaintiff; (c) permitting the Sheraton Nassau Beach Resort to become and remain in a dangerous and unsafe condition due to the placement of a large, heavy Aquamarine Water Slide, which was not properly tethered, secured, positioned and/or monitored such that it could fall on a business invitee causing serious personal injuries; (d) failing to properly tether, secure, position and monitor the large, heavy Aquamarine Water Slide; (e) failing to adequately and properly inspect, monitor, tether, secure and/or position the large, heavy Aquamarine Water Slide so as not to create an unreasonable risk of harm to persons such as plaintiff; (f) failing to erect barriers or other adequate warnings with regard to the dangerous and defective condition existing by virtue of the unsecured large, heavy Aquamarine Water Slide which was positioned in the immediate vicinity of the chaise lounge chairs and defendants' hotel patrons; and (g) failing to properly instruct, direct and supervise its agents, servants, workmen, employees and/or independent contractors to ensure that appropriate measures and warnings were provided to protect guests and patrons from an unreasonable risk of harm caused by an untethered and unsecured large, heavy Aquamarine Water Slide positioned in close proximity to defendants' guests and patrons.

---

[4] Defendants' Motions are practically identical. For purposes of convenience, we will cite only to Sheraton's Motion.

(*Id*. at ¶ 22(a)-(g).)

Both Starwood and Sheraton argue that Plaintiffs' Amended Complaint must be dismissed on the basis of *forum non conveniens*. In support of their Motions, Defendants attached the affidavit of Nicolas Lazarus, a Senior Loss Adjuster for Axis International Inc., who went to the Bahamas and investigated the events surrounding the accident. (Lazarus Aff., Starwood's Mot. Ex. G; Sheraton's Mot. Ex. H.)[5]

Lazarus states that in November 2011, he traveled to Nassau to investigate the incident that gave rise to the claim, and that as part of the investigation he met with several individuals who had knowledge of the incident. (Lazarus Aff. ¶ 3.) As part of his investigation he was provided with incident reports prepared by Athena Carroll and Stephanie Foster, both of whom were Aqua Marine employees at the time of the accident. (*Id*. at ¶ 5.) Lazarus met with Carroll and Foster during the course of his investigation. (*Id*. at ¶ 6.) In his affidavit, Lazarus reports that both Carroll and Foster assisted in erecting the waterslide prior to the incident, and were "eyewitnesses" to the events at issue. (*Id.* at ¶¶ 7-8.) He further reports that Foster provided assistance to Mrs. Yager after the accident. (*Id.* at ¶ 8.) Lazarus interviewed Taj Bastian, another Aqua Marine employee, who erected the waterslide and responded to Mrs. Yager after the incident occurred. (*Id.* at ¶ 9.) Lazarus interviewed Jacob Davis, a Sheraton security employee who also responded to the scene of the incident. (*Id*. at ¶ 10.) Finally, Lazarus reports that Mrs. Yager received initial medical treatment at a Doctors Hospital in the Bahamas, and underwent diagnostic testing at Fourth Terrace Diagnostic Centre Imaging at Grosvenor. (*Id*. at ¶ 11.)

---

[5] Defendants have attached the same exhibits to their Motions.

In further support of its Motion, Starwood provides the affidavits of Rothia Ferguson (Ferguson Aff., Sheraton's Mot. Ex. I) and Taj Bastian (Bastian Aff., Sheraton's Mot. Ex. J.) Ferguson is the Business Development Manager for Aqua Marine, and states that Athena Carroll was nearby the waterslide that landed on Mrs. Yager, and that Carroll attended to her following the accident. (Ferguson Aff. ¶¶ 1-3.) Ferguson does not state that Carroll was an eyewitness to the accident. Ferguson states that Carroll is no longer employed by Aqua Marine. (*Id*. at ¶ 4.) In Bastian's affidavit, he states that he is still employed with Aqua Marine, and that he attended to Mrs. Yager following the waterslide collapse. (Bastian Aff. ¶ 1, 3.) Again, he does not state that he was a witness to the accident itself. He states that if he were required to travel to the United States for trial, it would be a substantial personal and professional burden. (*Id*. at ¶ 5.)

In response, Plaintiffs identify several witnesses who will testify on their behalf who are located in the United States. First, Plaintiffs identify Carl Udell, an eyewitness to the incident, who helped to extricate Mrs. Yager from beneath the waterslide, and took photographs of the accident scene immediately following the incident. (Lavner Aff. ¶ 5, Pls.' Resp. Ex. 3.) Udell is a resident of Ohio, and states that he is willing to provide testimony in Philadelphia, but that it would be a substantial hardship if he were required to testify in the Bahamas. (*Id*.) Plaintiffs also identify several medical professionals who have provided medical treatment to Mrs. Yager following the incident. (*Id*. at ¶ 4.) These medical providers are all based in and around the Philadelphia area. (*Id*.) Finally, Plaintiffs state that approximately twenty-five witnesses will provide testimony regarding Mrs. Yager's condition immediately prior to the accident and her subsequent medical and physical condition. (*Id.* at ¶ 7.) According to Plaintiffs, these individuals reside in Michigan and Pennsylvania and travel to the Bahamas for a trial would create an undue hardship for these individuals. (*Id*.)

5

### A.     Legal Standard

The ultimate inquiry for the district court when deciding whether to dismiss an action on the basis of *forum non conveniens* is whether retention of jurisdiction "will best serve the convenience of the parties and ends of justice." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988) ("*Lacey I*") (quoting *Koster v. Am. Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). Dismissal is appropriate if maintaining the case in the plaintiff's chosen forum would "impose[] a heavy burden on the defendant or the court, and where plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). In analyzing motions to dismiss based on *forum non conveniens*, the court must first determine whether there is an adequate alternative forum in which the case may be heard. *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 633 (3d Cir. 1991). The court must then determine the amount of deference to be accorded to the plaintiff's choice of forum. *Id.* If an adequate forum exists, then the court must balance certain private and public interest factors. *Id.* The district court has considerable discretion in balancing these factors. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

If the court finds that "the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey II*"). The Third Circuit has established that dismissal for *forum non conveniens* should be "the exception rather than the rule." *Lony*, 935 F.2d at 609.

"[T]he defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis." *Lacey I*, 862 F.2d at 43-44. In order to meet this burden, the defendant "'must provide enough information to enable the District Court to balance the parties' interests.'"

6

*Id.* at 44 (quoting *Piper*, 454 U.S. at 258). The court's inquiry into the facts does not "require extensive investigation, and may be resolved on affidavits presented by the parties . . . ." *Biard*, 486 U.S. at 529.

### B. Adequate Alternative Forum

Defendants must first establish that an adequate alternative forum exists as to all defendants. *Lacey II*, 932 F.2d at 180. An adequate alternative forum exists where the defendants are amenable to process in another jurisdiction. *Id.* Defendants Sheraton and Baha Mar are amenable to process in the Bahamas as they are both incorporated in the Bahamas, and have their principal places of business there. (Am. Compl. ¶¶ 3, 4.) Defendant Starwood agreed to submit to the jurisdiction of the Bahamian Courts and waive any jurisdictional or venue defenses available to them in the Bahamian Courts or under Bahamian law. (Starwood's Mot. 5.) Accordingly, the Bahamas is an adequate alternative forum.

### C. Plaintiffs' Choice of Forum

The plaintiff's choice of forum is ordinarily given considerable deference and "should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." *Lacey I*, 862 F.2d at 43. This presumption in favor of the plaintiff's chosen forum is particularly strong when the plaintiff is a United States citizen. *Colantonio v. Hilton Int'l. Co.*, No. 03-1833, 2004 WL 1810291, at *2 (E.D. Pa. Aug. 13, 2004) (citing *Piper*, 454 U.S at 255-56 n.23). As Plaintiffs are United States citizens and residents of this District, their choice of forum is entitled to substantial deference.

### D. Private Interest Factors

The private interest factors to be considered by a court in deciding a *forum non conveniens* motion are:

7

>   the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper*, 454 U.S. at 241 n. 6 (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)).

In addition to these factors, the court may consider the defendant's ability to implead potential third-party defendants. *Id.* at 259.

### 1. Access to Sources of Proof and Availability of Witnesses

When evaluating the relative ease of access to sources of proof, and the availability of witnesses, "the district court must scrutinize the 'substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action.'" *Lacey I*, 862 F.2d at 46 (quoting *Biard*, 486 U.S. at 528).

Defendants argue that the waterslide is an important "source of proof" and that it is located in the Bahamas. (Sheraton's Mot. 7.) Defendants argue that a "scientific examination" of the waterslide and a view of it by the jury may be "integral to the defense." (*Id.*) Defendants fail to indicate why they may not conduct a "scientific examination," and present those findings at a trial here in Philadelphia. Moreover, Defendants' suggestion that a jury view of the waterslide may be appropriate in this case is particularly misguided since there is no right to a jury trial under Bahamian law. *See Campbell v. Starwood Hotels & Resorts Worldwide Inc.*, No. 07-61744, 2008 WL 2844020, at *6 (E.D. Pa. July 23, 2008) ("[S]ince there is no right to a jury trial in a civil case in the Bahamas, there is no compelling argument to be made here that a jury needs to view the scene.") In any event, the waterslide and accident scene can be adequately described and presented at trial through photographs, diagrams, and testimony. *Hall v. Nat'l*

*Serv. Indus., Inc.*, 172 F.R.D. 157, 161 (E.D. Pa. 1997) ("[T]he parties will be able to present evidence at trial in the form of verbal descriptions, charts, and photographs depicting the accident scene, thus rendering the necessity of the jury visiting the scene of the accident remote.").

Defendants assert that "all known eye-witnesses to the event . . . except Plaintiffs, are located in the Bahamas." (Sheraton's Mot. 6.) These eyewitnesses include current and former employees of Aqua Marine. (*Id.*) In addition to these eyewitnesses, Defendants indicate that the individuals who trained the allegedly negligent personnel involved with the waterslide are all located in the Bahamas. (*Id.* at 6-7.) Defendants maintain that they would incur substantial expense in obtaining the cooperation and attendance of these witnesses. (*Id.* at 7.) The geographical location of witnesses is not dispositive, however, as "the time and expense of obtaining the presence of the testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1397 (8th Cir. 1991) (citing *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 343 (8th Cir. 1983)).

Defendants also assert that many of these anticipated witnesses are under the exclusive control of Aqua Marine, a non-party Bahamian company, and since these witnesses are beyond the Court's subpoena power, Defendants have no ability to produce these witnesses for either deposition or trial. (*Id.* at 7.) Plaintiffs contend that since Aqua Marine is operating on the hotel's premises in the Bahamas, it is indeed likely that Defendants can procure the cooperation of these employees, if in fact, their testimony is necessary and relevant to their defense. (Pls.' Resp. to Sheraton 9.) Moreover, Plaintiffs suggest that there is likely to be an indemnification and hold harmless agreement between Aqua Marine and the Defendants. (*Id.*) We do not believe that Plaintiffs' contention is wholly unreasonable, and Defendants have failed to provide

9

the Court with any contrary evidence or assertion. Moreover, Defendants have merely shown that these Aqua Marine employees attended to Mrs. Yager after the accident, not that they were crucial eyewitnesses to the accident in question. (Jan. 18 Hr'g Tr. 9.) Accordingly, this particular factor does not militate in favor of dismissal.

Beyond these eyewitnesses, Defendants state that the medical professionals who examined Mrs. Yager immediately following the incident are located in the Bahamas. (Sheraton's Mot. 6.) While these individuals may be able to provide testimony as to the treatment administered immediately following the incident, Mrs. Yager received the vast majority of her treatment from medical professionals located in the Philadelphia area. (Pls.' Resp. to Sheraton 10-11.) Their testimony will be particularly important to establish the nature and extent of Mrs. Yager's injuries, an important factor in determining damages. We also note that even if the testimony of the physicians in the Bahamas is needed, this type of expert medical testimony can be offered through video depositions. *See Colantonio*, 2004 WL 1810291, at \*6 ("[E]xpert medical testimony is frequently offered by way of video depositions and often proves more cost effective and expeditious than live testimony.").

In addition to these aforementioned witnesses, there are several key witnesses located in the United States. As Starwood observes, Mrs. Yager herself is located in Pennsylvania, and will certainly provide critical testimony regarding the events surrounding the accident. Plaintiffs also identify Carl Udell, a resident of Ohio, as an important witness to the event. (Pls.' Resp. to Sheraton 10.) Not only did Udell extricate Mrs. Yager from underneath the slide, he also took photographs of the accident scene. (*Id*.) In addition, Plaintiffs state that Alex Chamblin, the Sheraton's acting General Manager at the time of the accident, is an important witness since he can provide important information about the Sheraton's property and operations. (*Id*.) Plaintiffs

10

believe that Chamblin is currently located in the United States, and is working for another major hotel group. (*Id*. (citing Lavner Aff. ¶ 6).)

In sum, if the case proceeds to trial, there are witnesses from both the United States and the Bahamas who could be important to the disposition of the matter. In either forum these witnesses will be forced to travel or to testify by deposition or video conferencing. The inconvenience of a few witnesses located in the Bahamas is insufficient to overcome the deference we must give to Plaintiffs' chosen forum.

### 2. *Ability to Implead Third Party Defendants*

According to Defendants, Aqua Marine could be liable to one or more of Defendants for contribution, but as Aqua Marine is a Bahamian corporation, it would not be subject to the jurisdiction of this Court, and thus Defendants would be unable to implead Aqua Marine in this matter. (Sheraton's Mot. 8-9.) There is little doubt that the collapse of the waterslide was the direct cause of the injuries sustained by Mrs. Yager. However, part of Plaintiffs' allegations relate to the duty that Defendants, as the owners and operators of a hotel, owe to an invitee, such as Mrs. Yager. (*See* Am. Compl. ¶¶ 18, 22.) This is a separate inquiry from whether or not the owner and operator of the waterslide was negligent. *See Reid-Walen*, 933 F.2d at 1398 (stating that liability of third party who directly caused the plaintiff's injuries was independent question from whether defendant had duty to provide safe environment). While it may be inconvenient for Defendants to pursue an indemnity or contribution action in the Bahamas, it is certainly not unduly burdensome for Defendants to bring a separate lawsuit against Aqua Marine in the Bahamas. *See id*. (finding that despite the inconvenience of bringing separate indemnification action in foreign jurisdiction, the inability to implead third-party did not warrant *forum non conveniens* dismissal); *Lehman*, 713 F. 2d at 343-44 (concluding that since defendants could

bring separate action for indemnification or contribution against third party in foreign jurisdiction the inability to implead the third party did not mandate dismissal); *Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1012 (D. N. J. 1996) (finding that the defendant's inability to implead other parties did not outweigh other factors since the defendant had the ability to pursue indemnification and contribution action in foreign jurisdiction); *Mowrey v. Johnson & Johnson*, 524 F. Supp. 771, 776 (W.D. Pa. 1981) ("[N]either the inability to implead third parties nor the lack of compulsory process necessarily mandates *forum non conveniens* dismissal of an action.").

### 3. Plaintiffs' Ability to Litigate in a Foreign Forum

As part of the private interest analysis, the Court should consider "the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum." *Id.* (citing *Lehman*, 713 F.2d at 343). Plaintiffs argue that they will undergo a substantial financial hardship if forced to litigate in the Bahamas because under Bahamian law, the use of contingency fees is prohibited. *See Wilson v. Island Seas Invs. Ltd.*, 590 F.3d 1264, 1272 (11th Cir. 2009); *Kristoff v. Otis Elevator Co.*, No. 96-4123, 1997 WL 67797, at *2 (E.D. Pa. Feb. 14, 1997). Due to the absence of contingency fee arrangements and the financial burden this would impose on Plaintiffs, this factor weighs in favor of Plaintiffs.

### 4. Burden on Defendant

A court may grant dismissal where trial would impose a "heavy burden on the defendant." *Piper*, 454 U.S. at 249. Defendants have failed to demonstrate that litigating this matter in Philadelphia will impose a heavy burden. In fact, according to the Operating Agreement between Baha Mar and Sheraton, the United States is the preferred and more convenient forum. (*See* Operating Agreement, Sheraton's Mot. Ex. K.) Under the terms

provided in that Agreement, all disputes between Starwood and Sheraton shall be resolved in the United States District Court for the Southern District of New York. (*Id.* at § 17.1.1.) The Agreement explicitly waives "all defenses based on lack of jurisdiction or inconvenient venue or forum for any litigation or other legal action or proceeding" pursued by the parties in the Southern District of New York. (*Id.* at § 17.5.1.) Clearly, the provisions of that Agreement refute Defendants' claims that litigating in the United States would create a substantial burden for Defendants.

After consideration of the private interest factors, we conclude that Defendants have failed to establish that the balance of these factors supports dismissal.

### E.  Public Interest Factors

The defendant must also demonstrate that the public interest factors favor dismissal. The public interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n. 6. (quoting *Gilbert*, 330 U.S. at 509.)

Defendants do not specifically address the public interest factors that weigh in their favor. Rather, they generally claim that "Pennsylvania has virtually no connection to this incident, other than that the person who allegedly suffered injuries is a Pennsylvania resident," and that "[t]he Bahamas, not the United States, has an interest in regulating the manner in which its hotels and resorts are operated, and in protecting hotel's guests." (Sheraton Mot. 9-10.)

13

Defendants' suggestion that Pennsylvania has "virtually no connection to the incident" is without merit. Undoubtedly the Bahamas has an interest in a lawsuit involving an accident occurring at one of its resorts, but Pennsylvania has an interest in providing its citizens with a local forum to seek redress for injuries caused by foreign defendants. *See Hall*, 172 F.R.D. at 161 (concluding that Pennsylvania had an "interest in enabling residents of Pennsylvania to seek relief in a Pennsylvania court."). Since both forums have an interest in the litigation, this factor is at most neutral, and does not weigh in favor of either party.

Defendants did not address which jurisdiction's law would apply to the litigation. If Bahamian law were to apply to this action, there does not appear to be any issue with a federal court in Pennsylvania applying Bahamian law. The application of foreign law by a federal court "is not dispositive on the *forum non conveniens* issue." *Lehman*, 713 F.2d at 345. Moreover, there are no language barriers to this Court's understanding of Bahamian law. Bahamian law is derived from English common law, and as such, utilizes familiar legal concepts. *See Reid-Walen*, 933 F.2d at 1401. Defendants have failed to establish that the public interest factors weigh in favor of dismissal.

After balancing both the private and public interest factors, and in light of the substantial deference afforded to Plaintiffs' chosen forum, we conclude that dismissal on the basis of *forum non conveniens* is inappropriate.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motions will be denied.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**

15